**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DEANDRE BRADLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-733-NJR** |
| | ) | |
| | ) | |
| **WEXFORD, INC.,** | ) | |
| **BOB JEFFREYS,** | ) | |
| **FRANK LAWRENCE,** | ) | |
| **M. SIDDIQUI,** | ) | |
| **JOHN DOE #1,** | ) | |
| **JOHN DOE #2,** | ) | |
| **JANE DOE #1,** | ) | |
| **BRENDA OTJEN,** | ) | |
| **CASSIE CHITTY** | ) | |
| **MS. CANNON,** | ) | |
| **RON SKIDMORE,** | ) | |
| **JOSEPH GOETZ, and** | ) | |
| **JERRY WHITHOFT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Deandre Bradley, an inmate of the Illinois Department of Corrections ("IDOC")
who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for
deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff
alleges he was subject to excessive use of force, was denied due process, and had his serious
medical needs ignored or undertreated. He also alleges he was denied access to protective custody
due to his use of a wheelchair, in violation of the requirements of the Americans with Disabilities
Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e,
and the United States Constitution. He seeks monetary damages and injunctive relief.

1

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Plaintiff makes the following allegations:  He is a paraplegic as a result of a stab wound that he previously suffered. (Doc. 1, pp. 4, 14). Due to his injuries, Plaintiff cannot walk, must use a wheelchair, and suffers from pressure sores. *Id*.

On June 19, 2019,[1] Plaintiff was scheduled to see the Parole Review Board. *Id.*, p. 3. Defendant Goetz came to his cell to retrieve him, and an argument ensued about Plaintiff's hair. *Id.* Goetz ordered Plaintiff back in his cell, stating that he had refused his Parole Review Board meeting. *Id.* After another exchange, Goetz assaulted Plaintiff and called for backup. *Id.*, pp. 4-5. When Defendant Whithoft and several other officers arrived, Plaintiff was on the ground and asked for medical attention due to severe pain in his back. *Id.*, p. 5. Whithoft ordered Plaintiff thrown back into his cell. *Id*. Plaintiff felt his back pop and his pain intensified, so he again requested medical attention. *Id.*, pp. 5-6. He was taken to North 2 block's medical area, where the nurse said that because there was no redness, he would have to wait to see the doctor in a couple of days. *Id.*, p. 6. Goetz later wrote a disciplinary report accusing Plaintiff of grabbing his pen and "using it in a stabbing motion" toward him. *Id.*, p. 13.

---

[1] The Complaint states that it was July 19, 2019, but the Court assumes based on context that the correct date is June.

Plaintiff was apparently placed back in his cell and asked Whithoft to speak with internal affairs and a crisis team—requests which he denied. *Id.*, p. 7. Whithoft then stated he was going to "make sure you [Plaintiff] don't eat for a while and suffer some other way[,]" and ordered that the food port should not be opened for any reason, including giving food or medications. *Id.* According to his Motion for Temporary Restraining Order, Plaintiff has been denied food and medication since at least June 24.[2] (Doc. 2, p. 15). In his Complaint, Plaintiff states that he was not fed or given prescribed pain and psychotropic medications for three days after the incident (June 19-21). (Doc. 1, p. 12). He alleges that Defendants Chitty, Jane Doe #1, and Otjen refused to provide him with his medications during this time, and that correctional officer John Doe #2 prevented him from getting prescribed medication on at least one occasion. *Id.*, pp. 12-13.

Despite his isolation, Plaintiff spoke with Defendant Cannon, a mental health worker who was doing rounds. (Doc. 1, p. 7). Plaintiff informed her he was having thoughts of self-harm, but Cannon refused to put him on crisis watch. *Id.* He then proceeded to intentionally cut himself. *Id.*

Plaintiff was placed on Elevated Security Risk ("ESR") status by Whithoft after the incident with Goetz. *Id.*, p. 8. Plaintiff was not given a hearing or opportunity to contest being placed on ESR status. As a result of his ESR status, unidentified officers have told Plaintiff that he cannot have his "indigent bag" of hygiene items; he was told he had to purchase them through the commissary. *Id.* He also was denied access to the prison yard. *Id.*

Plaintiff requested to be placed in protective custody ("PC"), which was denied by Whithoft because there is no PC accommodation for prisoners in wheelchairs. *Id.*, p. 9. Plaintiff alleges that he needs PC because it is "not out of the ordinary for security staff to retaliate against

---

[2] Plaintiff states that he has been denied food since "the June 24, 2019 altercation with Defendant Goetz[.]" (Doc. 2, p. 15). The Complaint and supporting exhibits suggest the incident took place June 19, 2019.

prisoners who have allegedly caused harm to a fellow officer[.]" *Id.*, p. 11. Plaintiff is currently being held in the ADA Wing, where he is the only segregated inmate. *Id.*, p. 12.

Plaintiff was seen by Defendant Dr. Siddiqui, who he informed about the pain, neurological issues, and an inability to sit upright on his own. *Id.*, pp. 14-15. Siddiqui stated the only course of treatment he could provide was an x-ray and refused to send him to an outside hospital for care or call for collegial review. *Id.*, pp. 14-15. An x-ray was performed, which showed that Plaintiff had arthritis in his neck. *Id.*, pp. 15-16. Siddiqui informed him that he would have to live with it because there was no cure. *Id.*, p. 16.

Plaintiff also complained to Siddiqui about his wheelchair, which had broken in December 2018 and was replaced with a large, heavy model that he cannot move himself. *Id.*, pp. 16, 18, 20. Siddiqui claimed this was an issue for the ADA coordinator and a physical therapist. *Id.*, pp. 16-17. Plaintiff then met with physical therapist John Doe #1, who told him he could not do anything about the wheelchair because it was a matter for the ADA staff and the doctor and because he was in segregation. *Id.*, p. 17. Plaintiff blames Wexford, Menard's contracted healthcare provider, for failing to "employ a certified individual" who can "properly fit and prescribe" adequate wheelchairs. *Id.*, pp. 22-23. Plaintiff also complains that the facility (possibly through Defendant Skidmore) is refusing to replace the specialized cushion he needs to prevent pressure sores. *Id.*, p. 21.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following twelve counts:

Count 1: **Eighth Amendment claim for use of excessive force against Goetz in connection with the June 19, 2019 incident.**

| Count 2: | Fourteenth Amendment due process claim against Goetz for denying him access to the Parole Review Board meeting and writing a false disciplinary report in connection with the June 19, 2019 incident. |
|---|---|
| Count 3: | Eighth Amendment deliberate indifference to a serious medical need claim against Whithoft in connection with placing Plaintiff back in his cell after the June 19, 2019 incident. |
| Count 4: | Eighth Amendment cruel and unusual punishment and deliberate indifference claims against Whithoft for ordering that Plaintiff not be fed or given medication. |
| Count 5: | Eighth Amendment deliberate indifference claim against Whithoft for denying Plaintiff protective custody. |
| Count 6: | Fourteenth Amendment denial of due process claim against Whithoft, Lawrence, and Jeffreys for Plaintiff's placement on ESR status. |
| Count 7: | Eighth Amendment deliberate indifference claim against Cannon for failing to respond to Plaintiff's indication that he would harm himself. |
| Count 8: | Eighth Amendment deliberate indifference claim against Chitty, Otjen, Jane Doe #1, and John Doe #2 for failing to administer Plaintiff's needed medications. |
| Count 9: | Eighth Amendment deliberate indifference claim against Siddiqui for failing send Plaintiff to an outside specialist. |
| Count 10: | Eighth Amendment deliberate indifference claim against Wexford, John Doe #1, and Skidmore related to his wheelchair and seat cushion issues. |
| Count 11: | ADA and/or RA claim against Lawrence and Jeffreys for failing to provide access to PC for inmates in a wheelchair. |
| Count 12: | Eighth Amendment conditions of confinement claim for being denied yard privileges and indigent bag hygiene items. |

The parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[3]

### Severance

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)). The Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants…or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (*citing* FED. R. CIV. P. 18, 20).

Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607; 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed.1978).

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit, but only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Assn., Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (citation omitted). Thus, the "core group" of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18. There is no

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

allowance, under either Rule 18 or Rule 20, for a party to join claims involving any defendant outside the "core group" identified under Rule 20.

In this case, most of the claims at least arguably stem from the same series of transactions or occurrences—Plaintiff's interaction with Goetz on June 19 and the consequences (both physical and disciplinary) that flowed from it.[4] They also appear to involve at least one common question of law or fact. Accordingly, Counts 1-4, 6-9, and 12 are properly joined pursuant to Rule 20 and will proceed in this action. Counts 5 and 11, although not transactionally related to the main claims, involve existing Defendants Lawrence, Jeffreys, and Whithoft, and thus they satisfy the requirements for joinder under Rule 18. The Court notes, however, that if it subsequently determines that a claim has been misjoined, that claim may be severed at any time. FED. R. CIV. P. 21. Moreover, the Court has broad discretion under Rule 21 to sever even properly-joined claims, *see UWM Student Association v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015), and under Rule 42(b) to separate claims for trial. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). The Court notes that Count 11 is primarily related to accessibility of a prison facility or program (in this case PC) for disabled prisoners, the primary issue in another of Plaintiff's pending cases (*Bradley v. Baldwin, et al.*, 19-cv-259-NJR). For the time being, the Court will not consolidate Count 11 into his prior case, though as the case progresses, the Court remains open to considering the issue *sua sponte* or on motion.

---

[4] Courts have not established bright-line rules for determining when claims arise out of the same "series of transactions or occurrences" such that joinder should be permitted under Rule 20. See *Mosley v. Gen. Motors Corp*., 497 F.2d 1330, 1333 (8th Cir.1974); 7 Charles Alan Wright *et al*., FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed.). Instead, courts take a case-by-case approach, often concluding that the transaction or occurrence test is satisfied when there is a logical relationship between the separate causes of action. *See In re EMC Corp.,* 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Mosley*, 497 F.2d at 1333; 7 Wright *et al*., *supra*, § 1653.

Although the first set of claims will proceed together in this action, there remains a claim which must be severed into its own action. Plaintiff's claim in Count 10, concerning the replacement of Plaintiff's wheelchair and seat cushion, has nothing to do with the claims proceeding in this action as required under Rule 20. Further, Wexford, Skidmore, and John Doe #1 are not part of any of the counts properly part of this case. As such, Count 10 is not properly joined under Rule 18.

Counts 1-9 and 11-12 shall remain in this action, and the merits of these claims will be reviewed in this Order. The Court shall sever Count 10, directed against Wexford, Skidmore, and John Doe #1, into a separate action. This separate action will have a newly assigned case number and shall undergo preliminary review pursuant to Section 1915A after the new case number and judge assignment has been made.

### Count 1

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

Plaintiff has adequately alleged that Goetz used excessive force on him on June 19, 2019. This claim therefore survives screening.

### Count 2

Plaintiff's claims that Goetz denied him due process fail. The Complaint lacks detail as to what sort of meeting he was scheduled to have with the Parole Review Board.[5] Even a full parole hearing carries no due process protection, however, unless it creates a legitimate expectation of

---

[5] The Court believes Plaintiff may be referring to the Illinois Prisoner Review Board.

parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979). Illinois parole hearings do not. *See Heidelberg v. Ill. Prisoner Review Bd.*, 163 F.3d 1025, 1027 (7th Cir. 1998). As such, Plaintiff identifies no constitutional right deprived by Goetz's actions in refusing to let him go to the meeting.

Plaintiff's allegations regarding Goetz's false disciplinary report also fail to state a claim. Generally, allegations of a false disciplinary report state no claim without an allegation that the inmate was denied an adequate hearing pursuant to *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Hanrahan v. Lane*, 747 F.2d 1137, 1139-41 (7th Cir. 1984). Plaintiff does not allege that he was denied an adequate hearing or that any punishment resulted from the ticket at all; rather, his position is that he was put on ESR status by Whithoft directly after the incident, with no reference to the ticket. As such, Plaintiff's claim does not survive screening and will be dismissed.

### Counts 3, 7, 8, and 9

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain on incarcerated persons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This can include the denial of necessary medical care. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). An inmate pursuing an Eighth Amendment claim must establish: (1) a serious medical condition (objective element); and (2) an official's deliberate indifference to that condition (subjective element). *Id.*

Here, Plaintiff has adequately stated a claim against Whithoft. Plaintiff alleges that he sustained injuries from Goetz's assault, was on the ground when Whithoft arrived, and requested medical attention. Especially for a paraplegic individual, this qualifies as an objectively serious medical condition, and Whithoft's direction that he be placed back in his cell could support a finding that he was deliberately indifferent.

Similarly, Plaintiff has stated claims against Cannon, Chitty, Otjen, Jane Doe #1, and John Doe #2. Cannon was directly told by Plaintiff that he was having thoughts of self-harm—a serious condition under any definition—and she apparently took no steps to address that issue. The question on those Defendants who followed Whithoft's orders regarding denial of medication is slightly closer, as Plaintiff does not specify what conditions the medications were meant to treat. An objectively serious condition, however, includes an ailment that has been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff has alleged he was denied prescription medication, so the Court will draw the reasonable inference that a medical professional's decision to prescribe medication in a prison setting was based on a determination that treatment was mandated. As such, Plaintiff's claims survive as to Cannon, Chitty, Otjen, Jane Doe #1, and John Doe #2.

Finally, Plaintiff has adequately stated a claim for relief against Siddiqui. Plaintiff's neurological symptoms, inability to hold himself upright, and persistent severe pain are objectively serious conditions. A prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care. *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). Like other medical decisions, referring (or not referring) a prisoner to a specialist involves the exercise of medical discretion and so refusal to refer constitutes deliberate indifference only if that choice is "blatantly inappropriate." *Id.* (citations omitted). Determination of whether it was blatantly inappropriate in this situation requires development of the factual record—drawing all inferences in Plaintiff's favor at this stage, he has adequately stated a claim.

### Count 5

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833

(internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order to state a failure to protect claim, a plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. The Seventh Circuit has suggested that "substantial risk" to mean "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). A plaintiff also must show that prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Here, Plaintiff claims that Whithoft was deliberately indifferent to his safety by refusing to place him in protective custody. Plaintiff simply states that he requested PC and that the request was denied. He does not allege either a substantial risk exists or a specific threat. The closest Plaintiff comes is an assertion that it is "not out of the ordinary" and "quite common" for staff to retaliate against inmates who "have allegedly caused harm to a fellow officer." Quite simply, that is not enough. Further, Plaintiff has failed to allege that Whithoft was deliberately indifferent— Plaintiff has alleged that PC was not available for wheelchair-bound inmates, so Whithoft's failure to place him in PC was not due to any disregard for a threat but because such a thing was (by Plaintiff's own pleading) impossible. As such, Count 5 is dismissed without prejudice.

## Count 6

Plaintiff's claims regarding his ESR status fails to survive screening. In order for the due process clause to apply, there must be a protected liberty interest that is being infringed upon. *Meachum v. Fano*, 427 U.S 215, 223-24 (1976). An inmate does not have a protected interest in a particular classification. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments.") (internal

citations omitted); *see also Siddiqui v. Lane*, 763 F.Supp. 284, 285-86 (N.D. Ill. 1991) ("It is a well-settled principle that an inmate has no constitutional right to a particular security classification status.") (internal citations omitted). As such, Plaintiff's placement on ESR status without an opportunity to contest it does not state a constitutional violation and Count 6 is dismissed.

## Count 11

According to the ADA, "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Dep't of Corrs.*, 685 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Discrimination under both includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Plaintiff alleges he is paralyzed and confined to a wheelchair. He alleges that he needs access to PC, but he has been denied those accommodations at Menard. These allegations are sufficient to articulate a colorable ADA and/or RA claim, at least at this early stage. As such, Warden Lawrence and Jeffreys, the Acting IDOC Director, will remain in the case in their official capacities.

## Count 12

Plaintiff also alleges that he is being denied an "indigent bag" of hygiene items and is being denied yard access by unidentified officers, blaming Plaintiff's ESR status. Ordinarily, a short-term deprivation of access to facilities or sanitary supplies does not rise to the level of a

constitutional violation. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Plaintiff has not identified any harm or threat of harm based on these deprivations. Further, he does not identify the officers who have refused his requests for an indigent bag or yard time. As such, Plaintiff fails to state a claim for cruel and unusual conditions of confinement.

### Motion for TRO/Preliminary Injunction

As part of Plaintiff's Complaint, he includes a motion for TRO and/or Preliminary Injunction (Doc. 2). A TRO is an order issued without notice to the party to be enjoined, and it may last no more than fourteen days. *See* FED. R. CIV. P. 65(b)(2). A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer*, 511 U.S. at 845.

The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;

2. no adequate remedy at law; and

3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Plaintiff essentially requests that all of the issues outlined in his Complaint be addressed by TRO or preliminary injunction, including being sent to an outside specialist for evaluation of his medical conditions, being seen by a wheelchair specialist, having a new chair and cushion purchased, being transferred to another facility which can accommodate a wheelchair-bound inmate in PC,[6] and being removed from ESR status. (Doc. 2, pp. 23-24).

Without expressing any opinion on the merits of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue on these claims. First, the ESR claim has been dismissed, and the wheelchair claim has been severed, as outlined above. As to the request for a specialist evaluation of his medical needs and his need for a transfer for PC, Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.* Plaintiff's condition has been diagnosed, and he has access to medical care. The fact that he considers the diagnosis inadequate does not suggest that he is in imminent danger from the condition. Further, Plaintiff has failed to articulate any specific or imminent threat requiring that he be placed in PC, as discussed above. "[A] speculative fear of injury is not a ground for an injunction." *Wright v. Miller*, 561 F. App'x 551, 554 (7th Cir. 2014) (*citing City of Los Angeles v. Lyons,* 461 U.S. 95, 104–05 (1983)). *See also Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (holding that imprisoned former police officer did not adequately allege a specific threat of harm to justify injunctive relief once he was separated from inmate who had threatened him, as "the risk of attack from any other of the more than 2,000 inmates at Lawrence, without more, was too speculative to warrant relief.").

---

[6] Plaintiff indicates that there is no such facility, and in the event no such facility is found he asks that he be released from prison 9 months early. (Doc. 2, p. 24).

All that being said, Plaintiff's Motion does contain allegations that he has been denied food and medication since at least June 24. (Doc. 2, p. 15). The Complaint suggests he was denied food and medication for three days following the incident and makes no mention of an ongoing issue. Despite this ambiguity, and the fact that Plaintiff has not actually asked for injunctive relief on this issue, the allegation is sufficiently serious and alarming that the Court will issue a TRO on that issue alone. If Plaintiff's claims are accurate, the denial of food and prescription medication represents an immediate potential for irreparable harm, and the claim has a high likelihood of succeeding. As Menard is supposed to be providing inmates with food and prescribed medication as part of the course of its normal operation, the hardship imposed on the defendants is minimal. If Plaintiff's allegations are false and he is receiving his food and medication, then the prejudice to Menard is similarly minimal. The motion is therefore **GRANTED** as to this issue, and a separate order will issue. The motion shall remain pending as to Plaintiff's request for a preliminary injunction to see an outside specialist for his physical issues, and Defendants Siddiqui and Lawrence are ordered to file timely responses to the motion on that issue.

## Disposition

For the reasons set forth above, **COUNT 10** is **SEVERED** into a new case against Wexford, Inc., John Doe #1, and Ron Skidmore. The claim in the new case shall be subject to merits review pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new case, the Clerk of Court is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion for temporary restraining order and preliminary injunction (Doc. 2); and
- Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 3).

The **only claims remaining in this action are COUNTS 1-9 and 11-12**. **Count 1** will proceed against **Joseph Goetz**, **Counts 3 and 4** will proceed against **Jerry Whithoft**, **Count 7**

will proceed against **Ms. Cannon, Count 8** will proceed against **Cassie Chitty, Brenda Otjen, Jane Doe #1 and John Doe #2, Count 9** will proceed against **M. Siddiqui, and Count 11** will proceed against **Bob Jeffreys** and **Frank Lawrence. Counts 2, 5, 6 and 12** are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to terminate **Wexford, Inc., John Doe #1 and Ron Skidmore** from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **GRANTED in part** and remains pending in part. A separate order will issue on the Temporary Restraining Order.

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of Defendants Jane Doe #1 and John Doe # 2. *Rodriguez*, 577 F.3d at 832. Defendant Lawrence, as warden of Menard, shall be responsible for responding to discovery aimed at identifying these unknown defendants. Once the names of Defendants Jane Doe #1 and John Doe #2 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

The Clerk of Court shall prepare for Defendants Joseph Goetz, Jerry Whithoft, Ms. Cannon, Cassie Chitty, Brenda Otjen, M. Siddiqui, Bob Jeffreys and Frank Lawrence: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to

effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

**IT IS ORDERED** that this entire matter be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), should all the parties consent to such a referral.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 7/11/2019**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**